**ORDERED.**

**Dated:  March 08, 2024**

Jason A. Burgess
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                        Chapter 11, Subchapter V

SAGO VENTURES, LLC,                          Case No. 8:23-bk-3489-BAJ

               Debtor.
_____/

**ORDER CONFIRMING AMENDED PLAN
FOR SMALL BUSINESS UNDER CHAPTER 11**

THIS CASE came before the Court on February 29, 2024, at 9:00 a.m. (the "**Confirmation Hearing**"), to consider confirmation of the *Amended Plan for Small Business Under Chapter 11* (Doc. No. 189) (the "**Plan**"), the *Debtor's Confirmation Declaration and Memorandum in Support of Confirmation of Amended Plan for Small Business Under Chapter 11* (Doc. No. 214) (the "**Confirmation Declaration**"), and the *Ballot Tabulation* (Doc. No. 212) (the "**Ballot Tabulation**").  The Court, having considered the Plan, the Confirmation Declaration, the Ballot Tabulation, and the record, and having heard the arguments and proffers made by counsel at the Confirmation Hearing, and being otherwise fully advised in the premises, makes the following findings:

A.      This Court has jurisdiction over the Debtor, the Debtor's Chapter 11 case, all of the Debtor's properties, contracts, and assets, wherever located, all Claims (as defined in Bankruptcy

Code Section 101(5)) against and equity interests in the Debtor, and all holders of Claims against and equity interests in the Debtor pursuant to 28 U.S.C. § 1334. Confirmation of the Plan is a "core proceeding" pursuant to, without limitation, 28 U.S.C. §§ 157(b)(2)(A), (L) and (O), and this Court has jurisdiction to enter a final order with respect thereto. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.       All capitalized terms used in this Confirmation Order but not defined herein shall have the meaning ascribed to such terms in the Plan.

C.       On August 14, 2023, the Debtor filed its Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") and made an election to proceed under Subchapter V of the Small Business Reorganization Act, as amended.

D.       On December 4, 2023, the Debtor, Land Trust Service Corporation, as Successor Trustee of the St. Thomas of St. Petersburg Trust u/t/a dated May 7, 2015 ("**LTSC**"), Glenn Goff ("**Goff**"), and George Allen Spearman ("**Spearman**") mediated all disputes between them at a mediation (the "**Mediation**"). At the conclusion of the Mediation, the Debtor, LTSC, Goff, and Spearman executed a Mediation Term Sheet. Thereafter, on January 23, 2024, the Debtor, LTSC, Goff, and Spearman executed a Mediation Settlement Agreement (the "**Settlement Agreement**") and LTSC, as seller, and the Debtor, as buyer, executed a Purchase and Sale Agreement (the "**PSA**").

E.       On January 26, 2024, the Debtor filed its *Debtor's Amended Motion to Approve Compromise By and Among the Debtor, Glenn Goff, George Allen Spearman, Land Trust Service Corporation, as Trustee, and Authorizing Debtor to Purchase Property Pursuant to the Associated Purchase and Sale Agreement* (Doc. No. 183) (the "**Compromise Motion**"). On February 14, 2024, the Court entered its *Order Granting Debtor's Amended Motion to Approve Compromise By and Among the Debtor, Glenn Goff, George Allen Spearman, Land Trust Service Corporation, as Trustee,*

4878-8184-8236, v. 1

*and Authorizing Debtor to Purchase Property Pursuant to the Associated Purchase and Sale Agreement* (Doc. No. 195) (the "**Compromise Order**"), which granted the Compromise Motion.

F.      On January 30, 2024, the Debtor filed the Plan.

G.      On January 26, 2024, the Court entered its *Order Scheduling (I) Hearing on Confirmation of Plan of Reorganization, (II) Deadlines with Respect to Confirmation Hearing, and (III) Deadlines for Filing Administrative Expense Applications* (Doc. No. 184) (the "**Solicitation Order**").

H.      Pursuant to the Solicitation Order, a package containing copies of the Plan, the Solicitation Order, and the ballot form was mailed by the Debtor to all Creditors (as defined in Bankruptcy Code Section 101(10)) of the Debtor as set forth on the Court's mailing matrix for this Chapter 11 case and to all holders of equity interests in the Debtor.  An appropriate certificate of service was filed by the Debtor (Doc. No. 190).

I.      The Plan classifies Claims and equity interests into three (3) separate Classes: Class 1: priority Claims, Class 2: non-priority unsecured Claims, and Class 3: equity interests.  As set forth in the Ballot Tabulation, the Debtor obtained the vote of the only impaired Class, Class 2 non-priority unsecured Claims.  There are no scheduled or filed Class 1 priority Claims, and the holders of equity interests in the Debtor are presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

J.      The Court held the Confirmation Hearing to consider confirmation of the Plan in accordance with § 1191 of the Bankruptcy Code.  At the Confirmation Hearing, the Court considered the Confirmation Declaration and the proffers made by counsel for the Debtor.

K.      The Confirmation Declaration summarizes the principal features of the Plan and establishes the Plan's compliance with §§ 1129 and 1191.  No objections were made at the

Confirmation Hearing to the Confirmation Declaration or the proffers made by counsel for the Debtor, and no party sought to cross examine George Allen Spearman or Glenn Goff, the Debtor's managing members. Accordingly, the Court accepted the Confirmation Declaration and the proffers and did not require further evidence in connection with confirmation of the Plan.

L.    At the Confirmation Hearing, counsel for the Debtor announced to the Court that the Debtor had received a term sheet and a follow up loan commitment from Usonia MH Plant City Property LLC, a Delaware limited liability company (the "**Lender**"), to provide a secured loan to the Debtor in the original principal amount of up to Four Million Five Hundred Thousand and 00/100 Dollars ($4,500,000.00) (the "**Loan**"), such Loan to be evidenced by a promissory note and secured by a mortgage from the Debtor, an assignment of leases and rents from the Debtor, and a non-recourse guaranty from Goff and Spearman (the foregoing documents together with all other documents executed in connection with the Loan, collectively, the "**Loan Documents**"). Counsel for the Debtor announced that the Loan Documents had been agreed to by the Lender, the Debtor, Goff and Spearman. Counsel for the Debtor further announced to the Court that the proceeds of the Loan would be used (i) to pay the Purchase Price (as that term is defined in the PSA) and the 2022 Tax Reimbursement (as that term is defined in the PSA) to LTSC under the PSA, (ii) to fund the Debtor's closing costs under the PSA and the Loan Documents, (iii) to pay all 2023 ad valorem and non-ad valorem real property taxes and tangible taxes on the Property (as hereinafter defined), and (iv) to pay allowed Claims (including allowed administrative expense Claims) in this Chapter 11 case. In addition, counsel for the Debtor announced to the Court that, contemporaneously with the Closing (as hereinafter defined), the Lender and the Debtor would be entering into an option to purchase agreement, pursuant to which the Lender would receive an option (the "**Lender Purchase Option**") to purchase the Property within thirty (30) days following the Closing.

4

M.      Counsel to the Debtor also announced to the Court that, following the Confirmation Hearing, the Debtor would file with the Court, pursuant to Section 6.4 of the PSA, the Buyer Satisfaction Notice (as that term is defined in the PSA), which would provide notice to all parties in interest, including LTSC, that the Debtor had satisfied all Post-May 2020 Violations (as that term is defined in the PSA). No party, including LTSC, objected at the Confirmation Hearing to the Debtor's compliance with Section 6.4 of the PSA and the Debtor's satisfaction of all Post-May 2020 Violations, and the Court therefore finds that the Debtor has complied with Section 6.4 of the PSA and satisfied all Post-May 2020 Violations.

N.      The Court finds that the Plan is fair, equitable, reasonable, and proper, is in the best interests of the Debtor's estate created under the Bankruptcy Code (the "**Estate**"), and is binding upon all Creditors of, and holders of equity interests in, the Debtor.

O.      The Court finds that the Plan meets the requirements of § 1129(a) of the Bankruptcy Code made applicable through § 1191(a) of the Bankruptcy Code.

The above findings having been made by the Court, and for the reasons stated on the record and in open court, it is:

**ORDERED**:

1.      The findings of fact and conclusions of law set forth in this Confirmation Order constitute this Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to this case pursuant to Federal Rule of Bankruptcy Procedure 9014.

2.      The findings of fact set forth above in this Confirmation Order are ratified and adopted as findings of this Court and are incorporated herein.

3.      To the extent any of the findings of fact set forth above are deemed to be conclusions of law, then such findings of fact are hereby adopted as conclusions of law. To the extent any of the

following conclusions of law are deemed to be findings of fact, then such conclusions of law are hereby adopted as findings of fact.

4.      The Plan is confirmed in all respects pursuant to § 1191(a) of the Bankruptcy Code.

5.      Any objections that were made or could have been made to confirmation of the Plan are overruled in all respects.

6.      Consistent with Article 7.02 of the Plan and § 1194 of the Bankruptcy Code, the Debtor shall make the distributions to Creditors under the Plan.  The schedule of proposed distributions to unsecured Creditors is set forth on **Exhibit A** attached hereto.

7.      On the Effective Date (as hereinafter defined), except as otherwise provided in the Plan or the Bankruptcy Code, all assets of the Debtor's Estate shall vest in the Debtor as reorganized under the Plan (the "**Reorganized Debtor**") free and clear of any and all liens, debts, obligations, claims, cure claims, liabilities, encumbrances, and all other interests of every kind and nature.

8.      The Plan and its provisions are binding upon the Debtor, the Debtor's Estate, the Reorganized Debtor, all Creditors of the Debtor, LTSC, and all holders of equity interests in the Debtor (whether or not the Claim or equity interest of such Creditors or holders of equity interests are impaired under the Plan and whether or not such Creditors or holders of equity interests have accepted the Plan), all parties to any executory contract or unexpired lease of the Debtor, all other parties in interest, and the respective successors and assigns of each of the foregoing.

9.      The Debtor (or the Reorganized Debtor) and LTSC are authorized and directed to take all such steps as may be required, necessary or appropriate (i) to effectuate and implement the Plan, this Confirmation Order, the Compromise Order, the Settlement Agreement, and the PSA, and (ii) to consummate the transactions contemplated by the Plan, this Confirmation Order, the Compromise

6

Order, the Settlement Agreement, and the PSA, including, but not limited to, executing all documents that are required, necessary or appropriate or contemplated by the PSA (collectively, the "**PSA Documents**") to sell, transfer, assign, and deliver to the Debtor in accordance with the terms of the PSA: (a) the real property located in Hillsborough County, Florida, commonly known as "The Happy Homes Mobile Home Park", located at 2900 Highway 92 E., Plant City, Florida and legally described on **Exhibit B** attached hereto including all buildings, structures, fixtures and appurtenances thereto (the "**Real Property**"), (b) all personal property located on the Real Property, including any and all mobile homes located on the Real Property (the "**Mobile Homes**") and any recreational vehicles owned by LTSC and located within the Real Property, if any (the "**RVs**"), and (c) such other personal property and assets to be transferred and sold to the Debtor under the PSA (the Mobile Homes, the RVs, and such other personal property and assets are referred to, collectively, as the "**Personal Property**"). Notwithstanding the preceding sentence, the Personal Property shall not include any personal property not owned by the Debtor and/or LTSC. For purposes of this Confirmation Order, the Real Property and the Personal Property are referred to, collectively, as the "**Property**").

10. The transfer of the Property to the Debtor (or the Reorganized Debtor) by LTSC, and LTSC's duties and obligations with respect thereto, shall be in accordance with the terms of the PSA. This Confirmation Order shall not supersede, alter or otherwise modify the terms of the Settlement Agreement or the PSA or the form of the Deed, the General Bill of Sale, and the Mobile Home Bill of Sale (as each of the foregoing terms are defined in the PSA) attached as Exhibit B, Exhibit C, and Exhibit G, respectively, to the PSA. Notwithstanding the two preceding sentences in this paragraph, (i) to the extent of any inconsistency between Sections 6.4 and 6.5 of the PSA and this Confirmation Order, the terms of this Confirmation Order shall govern, and (ii) upon the Closing and the filing of the Closing Notice (as hereinafter defined) with the Court, all Termination Procedures (as that term

7

is defined in the PSA) shall be deemed null and void and of no further force and effect.

11.     All settlements, agreements, and compromises provided for under the Plan and the Compromise Order, including the Settlement Agreement and the purchase and sale of the Property under the PSA, and all transactions, documents, instruments, and agreements referred to therein, contemplated thereunder or executed and delivered therewith, and any amendments or modifications thereto in substantial conformity therewith, are hereby approved, and the Debtor (or the Reorganized Debtor) and LTSC and the other parties thereto are authorized and directed to enter into them and to perform thereunder according to their respective terms, including to close on the sale of the Property. Specifically, and for the avoidance of doubt, LTSC is directed to comply in all respects with Section 6.5 of the PSA on or prior to the Closing including paying, satisfying, and/or releasing all Pre-May 2020 Liens (as that term is defined in the PSA) and, for purposes thereof, the Court finds that the Debtor has complied with and satisfied all of its obligations under Section 6.4 of the PSA.  The preceding sentence shall not be deemed a limitation of Section 6.6 of the PSA.

12.     All of the Loan Documents and all of the documents in connection with the Lender Purchase Option (collectively, the "**Purchase Option Documents**"), and all transactions, documents, instruments, and agreements referred to therein, contemplated thereunder or executed and delivered therewith, and any amendments or modifications thereto in substantial conformity therewith, are hereby approved, and the Debtor (or the Reorganized Debtor) and the Lender and the other parties thereto are authorized and directed to enter into them and to perform thereunder according to their respective terms.  The Lender Purchase Option does not impose or create any obligations, duties, or liabilities of LTSC to the Lender.

13.     The Property transferred pursuant to the PSA Documents and the Purchase Option Documents shall be deemed to be transferred free and clear of any and all liens, Claims, liabilities

(including any liability that results from, relates to or arises out of tort or any other product liability claim), duties, responsibilities, obligations, commitments, assessments, costs, expenses, losses, expenditures, charges, fees, penalties, fines, contributions, premiums, encumbrances and interests of any kind or nature whatsoever, including, without limitation, any and all mechanics' liens, materialmens' liens, consensual liens, non-consensual liens, statutory liens, health department, code enforcement and/or code compliance violations, liens, fines, or citations, hypothecations, security interests, mortgages, security deeds, deeds of trust, debts, levies, indentures, pledges, restrictions (whether on voting, sale, transfer, disposition or otherwise), charges, leases, licenses, easements, rights of way, encroachments, instruments, preferences, priorities, security agreements, conditional sales agreements, title retention contracts and other title retention agreements and other similar impositions, options, judgments, offsets, rights of recovery, rights of pre-emption, rights of setoff, rights of first refusal, other third party rights, other impositions, imperfections or defects of title or restrictions on transfer or use of any nature whatsoever, claims for reimbursement, claims for contribution, claims for indemnity, claims for exoneration, products liability claims, alter-ego claims, successor-in-interest claims, successor liability claims, substantial continuation claims, COBRA claims, withdrawal liability claims (including under any employee benefit plan), environmental claims, claims under or relating to any employee benefit plan, ERISA affiliate plan, or ERISA (including any pension or retirement plan), WARN claims or any claims under state or other laws of similar effect, tax claims (including claims for any and all foreign, federal, state and local taxes), escheatment claims, reclamation claims, obligations, liabilities, demands, and guaranties, whether any of the foregoing are known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, secured or unsecured, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured

4878-8184-8236, v. 1

or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of this Chapter 11 case, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability, successor-in-interest liability, continuation liability or substantial continuation liability including, without limitation, that the Debtor and/or the Reorganized Debtor are in any way a successor, successor-in-interest, continuation or substantial continuation of LTSC or its businesses (collectively, the "**Liens**").  Notwithstanding the foregoing language in this paragraph, (a) the transfer of the Property to the Debtor (or the Reorganized Debtor) by LTSC shall be subject to (i) any Liens set forth in the Loan Documents, and (ii) the Permitted Exceptions (as that term is defined in the PSA), and (b) the transfer of the Property to the Lender by the Debtor (or the Reorganized Debtor) shall be subject to any exceptions in any title policy issued in connection with the closing under the Purchase Option Documents.

14.    The transfer of the Property to the Debtor (or the Reorganized Debtor) by LTSC shall be deemed a legal, valid, and effective transfer of the Property and shall vest the Debtor (or the Reorganized Debtor) with all right, title, and interest in and to the Property, free and clear of all Liens of any kind or nature whatsoever, including, but not limited to (i) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtor's or the Reorganized Debtor's interest in the Property, or any similar rights, (ii) those relating to taxes arising under or out of, in connection with, or in any way relating to the Property prior to the Closing, and (iii) (A) all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, rights of setoff, demands, encumbrances, rights of first refusal, or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership, and (B) all debts

arising in any way in connection with any agreements, acts, or failures to act, of the Debtor. Notwithstanding the foregoing language in this paragraph, the transfer of the Property to the Debtor (or the Reorganized Debtor) by LTSC shall be subject to (a) any Liens set forth in the Loan Documents and (b) the Permitted Exceptions.

15.    The transfer of the Property to the Lender by the Debtor (or the Reorganized Debtor) shall be deemed a legal, valid, and effective transfer of the Property and shall vest the Lender with all right, title, and interest in and to the Property, free and clear of all Liens of any kind or nature whatsoever, including, but not limited to (i) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Lender's interest in the Property, or any similar rights, (ii) those relating to taxes arising under or out of, in connection with, or in any way relating to the Property prior to the closing under the Purchase Option Documents, and (iii) (A) all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, rights of setoff, demands, encumbrances, rights of first refusal, or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership, and (B) all debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtor or the Reorganized Debtor.  Notwithstanding the foregoing language in this paragraph, the transfer of the Property to the Lender by the Debtor (or the Reorganized Debtor) shall be subject to any exceptions in any title policy issued in connection with the closing under the Purchase Option Documents.

16.    Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security, or the making, delivery or recording of any instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, or the vesting, re-vesting, transfer or sale of any assets or real or personal property (including the Property) of, by or in the Debtor or

11

the Estate or the Reorganized Debtor pursuant to, in implementation of or as contemplated by the Plan, or any transaction arising out of, contemplated by or in any way related to the foregoing, including, but not limited to, the transfer of the Property to the Debtor (or the Reorganized Debtor) by LTSC, the PSA Documents, the financing in connection with the Loan, the Loan Documents, the transfer of the Property from the Debtor (or the Reorganized Debtor) to the Lender, and the Purchase Option Documents, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

17.    If any person or entity that has filed financing statements or other Lien-related documents as to the Property, including, without limitation, notices of Liens of any nature on or in the Property or agreements evidencing Liens on or in the Property, shall not have delivered to the Debtor at or prior to the Closing or the closing under the Loan Documents and/or the Purchase Option Documents, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of Liens which the person or entity has with respect to the Property, the Debtor is authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Property.

18.    Following the Closing, the Debtor and the Lender are authorized to file, register, or otherwise record a certified copy of this Confirmation Order with any appropriate governmental

unit (as defined in 11 U.S.C. § 101(27)), including in the public records of Hillsborough County, Florida, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens or other title restrictions in or on the Property of any kind or nature whatsoever.

19.     In connection with the assignment of any executory contracts and unexpired leases to the Lender on any subsequent transfer of the Property pursuant to the Purchase Option Documents, all counterparties to such executory contracts and unexpired leases shall be bound by Article 6 of the Plan and this Confirmation Order.

20.     Upon the Closing, this Confirmation Order shall be construed and shall constitute for any and all purposes a full and complete assignment, conveyance, and transfer of the Property to the Debtor (or the Reorganized Debtor) by LTSC.  Upon the closing under the Purchase Option Documents, this Confirmation Order shall be construed and shall constitute for any and all purposes a full and complete assignment, conveyance, and transfer of the Property to the Lender by the Debtor (or the Reorganized Debtor) and a bill of sale transferring good and marketable title in the Property to the Lender by the Debtor (or the Reorganized Debtor).  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Plan.

21.     Following the Closing, any default under the Plan or subsequent dismissal of this Chapter 11 case will not affect the validity of the transfer and conveyance of the Property from LTSC to the Debtor.

22.     Upon the closing of the transactions under the PSA (the "**Closing**"), the Debtor shall file with the Court a notice of occurrence of the Closing (the "**Closing Notice**") and serve

the Closing Notice on all parties receiving CM/ECF notice in this case.  Counsel for the Debtor shall thereafter file a certificate of service with the Court regarding the foregoing service of the Closing Notice.

23.    Within two (2) business days of the filing of the Closing Notice with the Court, Kathleen DiSanto, the Subchapter V Trustee as escrow agent, shall promptly return to the Debtor the originals of the Assignment Agreement (as that term is defined in the Settlement Agreement), the Debtor Escrow Bill of Sale (as that term is defined in the Settlement Agreement), the Debtor MH Titles (as that term is defined in the Settlement Agreement), and the Debtor TPP Titles (as that term is defined in the Settlement Agreement).

24.    Effective as of the Closing, without any further action by any party, LTSC, on behalf of itself and all of its partners, shareholders, members, managers, officers, directors, employees, agents, attorneys, legal representatives, trustees, heirs, parents, subsidiaries, affiliates, predecessors, successors and assigns and anyone claiming by, through or under them (collectively, the "**LTSC Release Parties**"), shall be deemed to have fully, finally and forever remised, released, acquitted, waived, disclaimed, surrendered, satisfied, and discharged the Debtor, Goff and Spearman and their respective partners, shareholders, members, managers, officers, directors, employees, agents, attorneys, legal representatives, trustees, heirs, estates, parents, subsidiaries, affiliates, predecessors, successors and assigns and anyone claiming by, through or under them (collectively, the "**Debtor Released Parties**"), of and from any and all manner of debts, dues, sums of money, accountings, bonds, warranties, representations, covenants, promises, contracts, controversies, agreements, liabilities, obligations, reckonings, expenses, damages, judgments, executions, objections, defenses, setoffs, actions, liens, suits, proceedings, claims, counterclaims, losses, costs, expenses, attorneys' fees, demands, and causes of action of any kind or nature

14

whatsoever, whether contingent, whether disputed or undisputed, whether or not well-founded in fact or law, whether in law, equity or otherwise, whether known or unknown, and whether now accrued or hereafter maturing, which any of the LTSC Release Parties ever had, now have or hereafter can, shall or may have against any of the Debtor Released Parties, from the beginning of the world until the Closing, for or by reason of any matter, cause, omission, or thing whatsoever; and, further, the LTSC Release Parties do hereby covenant and agree never to institute or cause to be instituted or continue prosecution of any lawsuit, arbitration or other form of action or proceeding of any kind or nature whatsoever against the Debtor Released Parties by reason of, related to, arising out of, or in connection with any of the foregoing released claims.  This release includes, without limitation, a release of all claims for injunctive relief, specific performance, declaratory judgment, accounting, compensatory damages, punitive damages, or damages or equitable relief of any nature, based on any theory of recovery, which the LTSC Release Parties have or which may hereafter accrue or otherwise be acquired, including, without limitation, claims for attorneys' fees and costs.  Nothing contained in this paragraph shall release the Debtor Released Parties from their covenants, obligations, duties and agreements set forth in the PSA and in the Settlement Agreement which expressly are stated in the PSA or in the Settlement Agreement to survive the Closing.  The release contained in this paragraph shall not release any of the Debtor Released Parties from any claims that the LTSC Release Parties or David Calhoun may have with respect to the double wide mobile home identified by the Debtor on its Statement of Financial Affairs as owned by the late Tom Calhoun at the Real Property, including the right to remove the double wide mobile home from the Real Property.

25.     Effective as of the Closing, without any further action by any party, the Debtor, Goff and Spearman, on behalf of themselves and all of their respective partners, shareholders,

members, managers, officers, directors, employees, agents, attorneys, legal representatives, trustees, heirs, parents, subsidiaries, affiliates, predecessors, successors and assigns and anyone claiming by, through or under them (collectively, the "**Debtor Release Parties**"), shall be deemed to have fully, finally and forever remised, released, acquitted, waived, disclaimed, surrendered, satisfied, and discharged LTSC and its partners, shareholders, members, managers, officers, directors, employees, agents, attorneys, legal representatives, trustees, heirs, estates, parents, subsidiaries, affiliates, predecessors, successors and assigns and anyone claiming by, through or under them (collectively, the "**LTSC Released Parties**"), of and from any and all manner of debts, dues, sums of money, accountings, bonds, warranties, representations, covenants, promises, contracts, controversies, agreements, liabilities, obligations, reckonings, expenses, damages, judgments, executions, objections, defenses, setoffs, actions, liens, suits, proceedings, claims, counterclaims, losses, costs, expenses, attorneys' fees, demands, and causes of action of any kind or nature whatsoever, whether contingent, whether disputed or undisputed, whether or not well-founded in fact or law, whether in law, equity or otherwise, whether known or unknown, and whether now accrued or hereafter maturing, which any of the Debtor Release Parties ever had, now have or hereafter can, shall or may have against any of the LTSC Released Parties, from the beginning of the world until the Closing, for or by reason of any matter, cause, omission, or thing whatsoever; and, further, the Debtor Release Parties do hereby covenant and agree never to institute or cause to be instituted or continue prosecution of any lawsuit, arbitration or other form of action or proceeding of any kind or nature whatsoever against the LTSC Released Parties by reason of, related to, arising out of, or in connection with any of the foregoing released claims. This release includes, without limitation, a release of all claims for injunctive relief, specific performance, declaratory judgment, accounting, compensatory damages, punitive damages, or

4878-8184-8236, v. 1

damages or equitable relief of any nature, based on any theory of recovery, which the Debtor Release Parties have or which may hereafter accrue or otherwise be acquired, including, without limitation, claims for attorneys' fees and costs. Nothing contained in this paragraph shall release the LTSC Released Parties from their covenants, obligations, duties and agreements set forth in the PSA and in the Settlement Agreement which expressly are stated in the PSA or in the Settlement Agreement to survive the Closing. The release contained in this paragraph shall not release any of the LTSC Released Parties or David Calhoun or the estate of Tom Calhoun from any claims that the Debtor Release Parties may have with respect to the double wide mobile home identified by the Debtor on its Statement of Financial Affairs as owned by the late Tom Calhoun at the Real Property, including the right to seek lot rent or remove the double wide mobile home from the Real Property.

26. Except as provided for herein, the Plan is confirmed in its entirety as if set forth *in haec verba*. The inclusion of decretal paragraphs in this Confirmation Order referring to specific provisions of the Plan or authorizing specific action by the Debtor shall not be construed to imply non-approval of other provisions or non-authorization of other actions.

27. The failure to reference or discuss any particular provision of the Plan in this Confirmation Order shall have no effect on the validity, binding effect and enforceability of such provision and such provision shall have the same validity, binding effect and enforceability as every other provision of the Plan.

28. To the extent of any inconsistency between the terms of the Plan and this Confirmation Order, the terms of this Confirmation Order shall govern.

29. Pursuant to the Plan and 11 U.S.C. §§ 105 and 1142, this Court retains the fullest jurisdiction subsequent to the entry of this Confirmation Order to ensure that the purposes and

intent of the Plan, this Confirmation Order, the Compromise Order, the Settlement Agreement, and the PSA are carried out.

30.     The Debtor's professionals and the Subchapter V Trustee shall file with the Court, within thirty (30) days after the date of entry of this Confirmation Order, their final applications for allowance of compensation and expenses incurred through the date of entry of this Confirmation Order.  The applications may be filed on seven (7) days negative notice to Creditors and parties in interest.

31.     The Effective Date of the Plan (the "**Effective Date**") shall be as defined in Article 8.02 of the Plan.  Upon the occurrence of the Effective Date, the Debtor shall file with the Court a notice of occurrence of the Effective Date.

32.     A copy of this Confirmation Order shall be served by counsel for the Debtor on all Creditors and parties in interest listed on **Exhibit C** attached hereto.

33.     The Court shall conduct a post-confirmation status conference on **May 2, 2024 at 9:30 a.m.**  All parties may attend the hearing in person. Parties are directed to consult the Procedures Governing Court Appearances regarding the Court's policies and procedures for attendance at hearings by Zoom, available at https://www.flmb.uscourts.gov/judges/burgess.

*Attorney Amy Denton Mayer is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within 3 days of entry of the order.*

18

# **Exhibit A**

## **Schedule of Distributions**

(See Attached)

## In re Sago Ventures, LLC

## Case No. 8:23-bk-3489-BAJ

## Schedule of Distributions to Unsecured Creditors in Class 2

| Scheduled Claim or Filed Claim No. | Name | Unsecured Claim[1] |
|---|---|---|
| 1 | US Bank NA dba Elan Financial Services | $ 27,114.08 |
| 2 | Chase Bank | $ 32,917.11 |
| 3 | Chase Bank | $ 25,473.88 |
| 4 | American Express | $ 30,072.56 |
| 5 | American Express | $ 9,971.68 |
| 6 | American Express | $ 9,929.49 |
| 7 | Truist Bank | $ 6,914.33 |
| 8 | Cellco Partnership dba Verizon Wireless | $ 1,249.80 |
| Scheduled | Bank of America | $ 643.00 |
| Scheduled | Bank of America | $ 6,662.00 |
| Scheduled | D Adams Environmental | $ 5,434.00 |
| Scheduled | D and D Construction Management, LLC | $ 102,487.00 |
| Scheduled | FCC Environmental | $ 20,622.00 |
| Scheduled | Glenn T. Goff | $ 26,790.00 |
| Scheduled | SouthState | $ 29,680.00 |
| Scheduled | W. Gregory Golson, Esq. | $ 7,770.35 |
| | **Total** | **$ 343,731.28** |

[1] The Debtor reserves all rights to object to claims.

**<u>Exhibit B</u>**

**<u>Legal Description of Real Property</u>**

(See Attached)

4878-8184-8236, v. 1

**PARCEL I:**

The East 1/2 of the Northwest 1/4 of the Northwest 1/4 of Section 26, Township 28 South, Range 22 East, Hillsborough County, Florida; LESS the North 130 feet of the South 300 feet of the East 60 feet of the West 240 feet thereof; and LESS the North 130 feet of the South 300 feet of the East 120 feet of the West 480 feet thereof; and LESS the North 120 feet of the South 445 feet of the East 118 feet thereof, all lying and being situate in Hillsborough County, Florida.

AND

That part of the Northeast 1/4 of the Northeast 1/4 of the Southwest 1/4 of the Northwest 1/4 of Section 26, Township 28 South, Range 22 East, Hillsborough County, Florida, lying North of the right of way line of State Road 600, formerly State Road 17, all lying and being situate in Hillsborough County, Florida.

AND

Beginning at the Northwest corner of the Northeast 1/4 of the Northeast 1/4 of the Southwest 1/4 of the Northwest 1/4 of Section 26, Township 28 South, Range 22 East, Hillsborough County, Florida, and run thence West 30 feet and thence South approximately 95 feet to the right of way of State Road 600; thence in a Northeasterly direction along the said right of way of the West line of the Northeast 1/4 of the Northeast 1/4 of the Southwest 1/4 of the Northwest 1/4, thence North to the Point of Beginning, all lying and being situate in Hillsborough County, Florida.

AND

That part of the Southwest 1/4 of the Northwest 1/4 of Section 26, Township 28 South, Range 22 East, Hillsborough County, Florida, lying North of the right of way of State Road 600, formerly State Road 17; LESS the East 360 feet thereof; and LESS the West 616.70 feet thereof, all lying and being situate in Hillsborough County, Florida.

**PARCEL II:**

The North 120 feet of the South 445 feet of the East 118 feet of the East 1/2 of the Northwest 1/4 of the Northwest 1/4 of Section 26, Township 28 South, Range 22 East, lying and being situate in Hillsborough County, Florida.

**PARCEL III:**

The North 130 feet of the South 300 feet of the East 120 feet of the West 480 feet of the East 1/2 of the Northwest 1/4 of the Northwest 1/4, of Section 26, Township 28 South, Range 22 East, all lying and being situate in Hillsborough County, Florida.

**PARCEL IV:**

The North 65 feet of the South 235 feet of the East 60 feet of the West 240 feet of the East 1/2 of the Northwest 1/4 of the Northwest 1/4 in Section 26, Township 28 South, Range 22 East, lying and being situate in Hillsborough County, Florida.

AND

The North 65 feet of the South 300 feet of the East 60 feet of the West 240 feet of the East 1/2 of the Northwest 1/4 of the Northwest 1/4 in Section 26, Township 28 South, Range 22 East, lying and being situate in Hillsborough County, Florida.

**<u>Exhibit C</u>**

**<u>Service List</u>**

(See Attached)

## SERVICE LIST

**Via United States Mail**

EROC Advisors, LLC, 3401 W. Cypress Street, Suite 209, Tampa, FL 33607-5021

FCC Environmental, 460 Wildwood Forest Dr., Suite 100, Spring, TX 77380

Florida Dept of Revenue, P.O. Box 6668, Tallahassee, FL 32314-6668

American Express, P.O. Box 96001, Los Angeles, CA 90096-0800

American Express National Bank, c/o Becket and Lee LLP, PO Box 3001, Malvern PA 19355-0701

Bank of America, P.O. Box 660441, Dallas, Texas 75266-0441

Cellco Partnership d/b/a Verizon Wireless, William M Vermette, 22001 Loudoun County PKWY, Ashburn, VA 20147-6122

JPMorgan Chase Bank N A, Bankruptcy Mail Intake Team, 700 Kansas Lane Floor 01, Monroe LA 71203-4774

D Adams Environmental, P.O. Box 962, Gibsonton, FL 33534-0962

D and D Construction Management, LLC, 3701 62nd St. N., St. Petersburg, FL 33710-1618

Department of Revenue, PO Box 6668, Tallahassee FL 32314-6668

Florida Department of Revenue 5050 W. Tennessee St., Tallahassee, FL 32399-0100

Glenn T. Goff, 1810 Via Chianti St., Plant City, FL 33566-1002

Internal Revenue Service, Centralized Insolvency Operations, P.O. Box 7346, Philadelphia, PA 19101-7346

JPMorgan Chase Bank, N.A., s/b/m/t Chase Bank USA, N.A., c/o Robertson, Anschutz, Schneid, Crane & Partners, PLLC, 6409 Congress Avenue, Suite 100, Boca Raton, FL 33487-2853

Land Trust Service Corporation as, Successor Trustee, P.O. Box 186, Lake Wales, FL 33859-0186

Land Trust Service Corporation, Successor Tr, c/o John N. Muratides, Esquire, Stearns Weaver Miller, et al, 401 East Jackson Street, Suite 2100, Tampa, Florida 33602-5232

Land Trust Services Corporation, as Successor, of the St. Thomas of St. Petersburg Trust, 924 West Colonial Drive, Orlando, FL 32804-7314

Land Trust Service Corp., P.O. Box 547945, Orlando, FL 32854-7945

SouthState, P.O. Box 790408, St Louis, MO 63179-0408

Truist Bank, P.O. Box 791622, Baltimore, MD 21279-1622

Truist Bank, Support Services, PO Box 85092, Richmond, VA 23285-5092

U.S. Bank NA dba Elan Financial Services, Bankruptcy Department, PO Box 108, Saint Louis MO 63166-0108

Chief, Trial Section, Southern Region, U.S. Department of Justice, Tax Division, Washington, D.C. 20530

Office of the U.S. Attorney, Attn: Civil Process Clerk, 400 North Tampa St., Ste. 3200, Tampa, FL 33602

U.S. Securities and Exchange Commission, Atlanta Regional Office, Reorganization Branch, 950 East Paces Ferry Road, N.E., Suite 900, Atlanta, GA 30326-1382

Attorney General of the United States, 950 Pennsylvania Avenue, NW Washington, D.C. 20530-0001

Hillsborough County, Board of County Commissioners, Code Enforcement Dept., Attn: Dennis Sweeney, 601 E. Kennedy Blvd., Tampa, Florida 33602

Hillsborough County, Code Enforcement Dept., 3629 Queen Palm Dr., Tampa, FL 33619

Florida Department of Health-Hillsborough County, Environmental Health Services, P.O. Box 5135, Tampa, Florida 33675-5135

Hillsborough County, Environmental Health Services, Community Health Dept., 1105 est Kennedy Blvd., Tampa, FL 33602

Jason A. Burgess, Jacksonville, 300 North Hogan Street, Room 4-123, Jacksonville, FL 32202-4204

Kenneth Pope, Esq., Hillsborough County Attorney's Office, 601 E. Kennedy Blvd, 27th Floor, Tampa, FL 33602

**Transmission of Notices of Electronic Filing Via CM/ECF**

Jason B. Burnett on behalf of Creditor Land Trust Service Corporation, as successor trustee of The St. Thomas of St. Petersburg Trust u/t/a dated May 7, 2015
jason.burnett@gray-robinson.com, ken.jacobs@gray-robinson.com; kim.miller@gray-robinson.com

Kathleen DiSanto on behalf of Trustee Kathleen L DiSanto
kdisanto@bushross.com, bnkecf@bushross.com; bankruptcy.eservice@bushross.com, disanto.trustee@bushross.com, bankruptcy.eservice@bushross.com;
ecf.alert+disanto@titlexi.com

W Gregory Golson on behalf of Debtor Sago Ventures, LLC
wgg@floridalandlaw.com, kld@floridalandlaw.com

John N Muratides on behalf of Creditor Land Trust Service Corporation, as successor trustee of The St. Thomas of St. Petersburg Trust u/t/a dated May 7, 2015
jmuratides@stearnsweaver.com, lwade@swmwas.com

Nicole Peair on behalf of U.S. Trustee United States Trustee - TPA
Nicole.W.Peair@USdoj.gov

United States Trustee - TPA
USTPRegion21.TP.ECF@USDOJ.GOV